# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-12-00726-CV

**Mary Louise Serafine, Appellant**

v.

**Alexander Blunt and Ashley Blunt, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-12-001270, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

## C O N C U R R I N G   O P I N I O N

The concurring opinion dated May 1, 2015, is withdrawn, and this opinion is substituted in its place.

Although I join in the Court's judgment, I am compelled to add a few additional observations regarding the ramifications of the Texas Citizens Participation Act (TCPA)[1]—our state's so-called "anti-SLAPP" law[2]—as demonstrated by this case. Perhaps the most obvious take-

---

[1] *See* Citizens Participation Act, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961, 961–64 (codified at Tex. Civ. Prac. & Rem. Code §§ 27.001–.011).

[2] *See, e.g.*, *Kinney v. BCG Attorney Search, Inc.*, No. 03–12–00579–CV, 2014 WL 1432012, at *1 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.) (observing that TCPA "is an 'anti-SLAPP' statute"); *In re Lipsky*, 411 S.W.3d 530, 536 n.1 (Tex. App.—Fort Worth 2013, orig. proceeding) (referring to TCPA as "anti-SLAPP legislation"), *mand. denied*, __ S.W.3d __, No. 13-0928, 2015 WL 1870073 (Tex. Apr. 24, 2015); *Rehak Creative Servs., Inc. v. Witt*, 404

away point is that the TCPA is less an "anti-SLAPP" law than an across-the-board game-changer in Texas civil litigation if a lawsuit like Serafine's—which arises from a boundary dispute and personality conflicts between neighboring homeowners—is elevated to the status of the "exercise of the right to petition" protected by the Act and unremarkable defensive measures like the Blunts assert are made subject to dismissal as "legal actions" "based on, relate[d] to, or . . . in response to" that "exercise." I also write separately to emphasize the difficulty of navigating the TCPA's current text and the far-reaching issues that this otherwise straightforward case raises under the statute. Although the Court correctly resolves these questions, at least implicitly, the required analysis of the statutory text is far more complex than it acknowledges, and I differ with some aspects of its reasoning.

## I.

### THE "ELEPHANT IN THE ROOM": AS WRITTEN, THE TCPA IS, AT BEST, A VASTLY OVERBROAD "ANTI-SLAPP" LAW

If one examines the Texas Legislature's recorded deliberations preceding its 2011 enactment of the TCPA, two facts about the statute's origins are readily apparent—(1) the measure was pushed by media interests,[3] but (2) the paramount professed policy goal cited by proponents was

---

S.W.3d 716, 719 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (terming TCPA "an anti-SLAPP law").

[3] *See, e.g.*, House Comm. on Judiciary and Civil Jurisprudence, Bill Analysis, Tex. H.B. 2973, 82d Leg., R.S. (2011) (reflecting that supportive witnesses included a representative of the Freedom of Information Foundation of Texas (FOIF)); *see also* Mark C. Walker, *The Texas Anti-SLAPP Statute: Issues for Business and Reputation Tort Litigation*, Presented at the State Bar of Texas, Texas Bar CLE Business Disputes Course, at 5 (2013) (observing that the same FOIF representative who testified has elsewhere been credited with having "drafted the TCPA and proposed, organized, and supported its passage").

to protect ordinary Texans from abusive "SLAPP" litigation.[4]  A "SLAPP" ("Strategic Lawsuit Against Public Participation") refers, generally speaking, to a meritless lawsuit that is aimed at deterring members of the public—through intimidation, expense, distraction, or other collateral impacts of the litigation process in itself—from advocating governmental action on some issue of public concern.[5]  The concept is thus similar and somewhat parallel to the "sham litigation" doctrine that has evolved in First Amendment jurisprudence.  The United States Supreme Court has long held that the First Amendment right to petition government for redress of grievances[6] encompasses a right

---

[4] *See* Citizen Participation Act, 2011 Tex. Gen. Laws at 961; Senate Comm. on State Affairs, Bill Analysis, Tex. H.B. 2973, 82d Leg., R.S. (2011).

[5] *See, e.g.*, George W. Pring & Penelope Canan, *"Strategic Lawsuits Against Public Participation" ("SLAPPs"):  An Introduction to the Bench, Bar and Bystanders*, 12 Bridgeport L. Rev. 937, 943–44 (1992) (describing SLAPPs as lawsuits that are "without substantial merit that are brought by private interests to 'stop citizens from exercising their political rights or to punish them for having done so'" (quoting *Gordon v. Marrone*, No. 185 44/90, Sup. Ct., Westchester Cnty., N.Y. (Apr. 13, 1992))); *see also Cheniere Energy, Inc. v. Lofti*, 449 S.W.3d 210, 212 (Tex. App.—Houston [1st Dist.], no pet.) (describing SLAPP as lawsuit "filed against politically and socially active individuals—not with the goal of prevailing on the merits but, instead, of chilling those individuals' First Amendment activities").  Professor Pring, who with Professor Canan is credited with the first scholarship regarding the practice, set out the following four criteria that, in his view, distinguish a SLAPP suit:  (1) a civil complaint or counterclaim for monetary or injunctive relief; (2) filed against non-governmental individuals or groups; (3) because of their communications to a government body, official, or the electorate; and (4) on an issue of some public interest or concern.  *See* George W. Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 Pace Envtl. L. Rev. 3, 7–8 (1989).  Pring also cited the following examples of the sorts of communications that are targeted by SLAPP suits:  "reporting violations of law, writing to government officials, attending public hearings, testifying before governmental bodies, circulating petitions for signature, lobbying for legislation, campaigning in initiative or referendum elections, filing agency protests, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstrations."  *Id*. at 5 (emphasis added).

[6] *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances.").

of access to the courts,[7] but it has also cautioned that the right to petition does not protect mere "sham" petitioning, that which is "'not genuinely aimed at procuring favorable governmental action' at all" but instead seeks to use "the governmental *process*[,] as opposed to the *outcome* of that process," to harass, increase costs for, or otherwise harm a rival as an end in itself.[8] In the context of litigation, the Supreme Court has refined the concept into a two-part analysis for determining whether a lawsuit amounts to sham petitioning:  (1) the lawsuit must be "objectively baseless," i.e., "no reasonable litigant could realistically expect success on the merits"; and (2) only in the event "the challenged litigation is objectively meritless," the court determines whether the baseless lawsuit conceals an attempt to harm a rival directly through the process itself as opposed to the outcome.[9] In the case of a SLAPP suit, the harm intended by the baseless litigation is the suppression of the sorts of expressive activities that are the essence of self-government.[10]

A SLAPP suit thus represents an especially pernicious species of lawsuit abuse—already an abiding concern of recent Texas Legislatures[11]—that not only burdens the civil

---

[7]  *See Bill Johnson's Rests., Inc. v. National Lab. Rel. Bd.*, 461 U.S. 731, 741 (1983); *California Motor Transp. Co. v. Trucking Unltd.*, 404 U.S. 508, 510–11 (1972).

[8]  *City of Columbia v. Omni Outdoor Adver., Inc.*, 499 U.S., 365, 380 (1991) (quoting *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500, n.4 (1988)); *see California Motor*, 404 U.S. at 510–17; *see also* Phillip E. Areeda & Hebert Hovenkamp, 1 *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶¶ 204–05 (4th ed. 2013) (explaining the concept).

[9]  *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60–61 (1993) (quoting *City of Columbia*, 499 U.S. at 380).

[10]  *See, e.g.*, *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985) ("'[S]peech concerning public affairs is more than self-expression; it is the essence of self-government.'" (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964))).

[11]  *See, e.g.*, Act of May 25, 2011, 82d Leg., R.S., ch. 203, § 1.01–.02, 2011 Tex. Gen. Laws 757 (codified at Tex. Gov't Code § 22.004(g)) (requiring Texas Supreme Court to adopt rules "to

justice system and private rights, but also threatens free expression and political participation. It is

thus perhaps unsurprising that the Legislature passed the TCPA with nary an opposing vote in either

chamber.[12] But despite all the hue and cry about SLAPP suits and their evils reflected in the TCPA's

legislative history,[13] the text of the Act itself makes no explicit mention of SLAPPs, nor of any

provide for the dismissal of causes of action that have no basis in law or fact") and at Tex. Civ. Prac. & Rem. Code § 30.021 (providing award of attorney's fees in connection with motions under Government Code 22.004(g)); Act of June 2, 2003, 78th Leg., R.S., ch. 204, 2003 Tex. Gen. Laws 847 (the omnibus H.B. 4).

[12] *See* H.J. of Tex., 82d Leg., R.S. 4623 (2011) (141 Yeas, 0 Nays, 2 Present, not voting); S.J. of Tex., 82d Leg., R.S. 2532 (2011) (Yeas 31, Nays 0).

[13] *See* Citizen Participation Act, 2011 Tex. Gen. Laws at 961 (caption describes "[a]n Act relating to encouraging public participation by citizens by protecting a person's right to petition, right of free speech, and right of association from meritless lawsuits arising from actions taken in furtherance of those rights"). The Senate Committee Report on the TCPA further illustrates the TCPA's policy backdrop and asserted justifications:

> Citizen participation is the heart of our democracy. Whether petitioning the government, writing a traditional news article, or commenting on the quality of a business, involvement of citizens in the exchange of idea benefits our society.
>
> Yet frivolous lawsuits aimed at silencing those involved in these activities are becoming more common, and are a threat to the growth of our democracy. The Internet age has created a more permanent and searchable record of public participation as citizen participation in democracy grows through self-publishing, citizen journalism, and other forms of speech. Unfortunately, abuses of the legal system, aimed at silencing these citizens, have also grown. These lawsuits are called Strategic Lawsuits Against Public Participation or "SLA[P]P" suits.
>
> Twenty-seven states and the District of Columbia have passed similar acts, most commonly known as either "Anti-SLAPP" laws or "Citizen Participation Acts" that allow defendants in such cases to dismiss cases earlier than would otherwise be possible, thus limiting the costs and fees. The Texas Citizen Participation Act would allow defendants—who are sued as a result of exercising their right to free speech or their right to petition the government—to file a motion to dismiss the suit . . . .

5

related concept like sham litigation.[14]  And, as the Texas Supreme Court has repeatedly instructed lower courts, we are to rely upon the statutory text the Legislature actually used, not extrinsic legislative history or other possible indicia of what legislators might have meant subjectively, as our paramount guide to the "legislative intent" we are to ascertain and follow faithfully.[15]

C.S.H.B. 2973 amends current law relating to encouraging public participation by citizens by protecting a person's right to petition, right of free speech, and right of association from meritless lawsuits arising from actions taken in furtherance of those rights.

Senate Comm. on State Affairs, Bill Analysis, Tex. H.B. 2973, 82d Leg., R.S. (2011).

[14] *See generally* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011.

[15] *See, e.g.*, *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent. . . .  To discern that intent, we begin with the statute's words." (citing Tex. Gov't Code §§ 312.003, .005; *Texas Dept. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004); *Texas Dept. of Protective & Regulatory Services v. Mega Child Care*, 145 S.W.3d 170, 176 (Tex. 2004))); *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631–32 (Tex. 2008) ("When interpreting a statute, we look first and foremost to the plain meaning of the words used. . . .  And ordinarily, when divining legislative intent, 'the truest manifestation' of what lawmakers intended is what they enacted, 'the literal text they voted on.'" (citing *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006))); *see also Zachry Constr. Corp. v. Port of Houston Auth.*, 449 S.W.3d 98, 113 (Tex. 2014) ("[W]e have repeatedly held that "[s]tatements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute.'" (quoting *Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011) (citing *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 466–467 (Tex. 2011)); *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 191–92 (Tex. 2010) (Wainwright, J., dissenting); *AT&T Commc'ns of Tex., L.P. v. Sw. Bell Tel. Co.*, 186 S.W.3d 517, 528–29 (Tex. 2006); *General Chem. Corp. v. De La Lastra*, 852 S.W.2d 916, 923 (Tex. 1993))); *City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 137 (Tex. 2013) ("When a statute is clear and unambiguous, we do not resort to extrinsic aides such as legislative history to interpret the statute." (citing *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 442 (Tex. 2009); *Molinet*, 356 S.W.3d at 414)); *Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999) (emphasizing that "legislative history cannot be used to alter or disregard the express terms of a code provision when its meaning is clear from the code when considered in its entirety, unless there is an error such as a

6

The TCPA is codified in chapter 27 of the Civil Practice and Remedies Code[16] and, in section 27.002, the Legislature provided the following general statement of its intent in enacting the chapter:

> The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.[17]

The Legislature gave further guidance to courts in section 27.011 of the TCPA, titled "Construction."[18] Subsection (b) of section 27.011 states that the Act "shall be construed liberally to effectuate its purpose and intent fully."[19] Read in conjunction with section 27.002, this mandate would refer to a dual duty on the part of courts to "liberally construe" the statute both to "encourage and safeguard the constitutional rights" protected by the statute and "protect the rights of a person to file meritorious lawsuits for demonstrable injury."[20] Subsection (a) of section 27.011 also states that the TCPA "does not abrogate or lessen any other defense, remedy, immunity, or privilege

---

typographical one," and holding that unambiguous statutory text controlled over Legislature's express statement of its intent that statute merely recodify prior law without substantive change).

[16] *See* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011.

[17] *Id.* § 27.002.

[18] *Id*. § 27.011.

[19] *Id*. § 27.011(b).

[20] *Id*. §§ 27.002, .011(b); *see Cheniere Energy*, 449 S.W.3d at 216 (emphasizing "the explicitly stated purpose of the statute, namely, to *balance* the protection of First Amendment rights against the right all individual have to file lawsuits to redress their injuries").

available under other constitutional, statutory, case or common law or rule provisions."[21] Read in context, the intent of this provision would presumably be to preserve "any other defense, remedy, immunity, or privilege" that external law provides for attacking "legal actions" against which the TCPA provides a remedy.[22]

The specific means by which the Legislature sought to accomplish the TCPA's stated purposes was to provide a new set of procedural mechanisms through which a litigant may require, by motion, a threshold testing of the merits of legal proceedings or filings that are deemed to implicate the expressive interests protected by the statute, with the remedies of expedited dismissal, cost-shifting, and sanctions for any found wanting.[23] The TCPA identifies the class of proceedings and filings subject to such motions as having the following three characteristics or elements:

---

[21] Tex. Civ. Prac. & Rem. Code § 27.011(a).

[22] *Accord Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 82 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (in reliance on subsection (a), holding that TCPA movant seeking dismissal of defamation claim could raise substantial-truth defense in opposition to plaintiff's prima-facie case despite absence of explicit authorization under pre-2013 version of TCPA). Although subsection (a) could conceivably be read to mean that the TCPA must be construed to have no effect on any legal claim or defense, that would render much of the statute—which specifically requires dismissal of certain "legal actions"—a nullity, and courts are generally to avoid such constructions if reasonable and possible. *See Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010); *see also* Tex. Gov't Code § 311.021(2) (presumption that entire statute is intended to be effective); *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 637 (Tex. 2010) ("Courts 'do not lightly presume that the Legislature may have done a useless act.'" (quoting *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 485 (Tex. 1998)). Subsection (a), can be reconciled with the remainder of the Act by construing it in the manner indicated above.

[23] *See* Tex. Civ. Prac. & Rem. Code §§ 27.003–.005, .009.

8

- A "*legal action . . .*"[24]

- . . . that "*is based on, relates to, or is in response to . . .*"[25]

- . . . the movant's "*exercise of the right of free speech, right to petition, or right of association.*"[26]

The movant seeking dismissal under the TCPA has the initial burden to establish each of these elements "by a preponderance of the evidence."[27] The Act is rather murky regarding the factual aspects of this "preponderance of the evidence" inquiry and how appellate courts are to review any such determinations by trial courts.[28] What can be said with greater certainty, however, is that

---

[24] *Id*. §§ 27.003(a) (emphasis added).

[25] *Id.* (emphasis added).

[26] *Id.* § 27.005(b)(1)–(3) (emphasis added).

[27] *Id*. § 27.005(b).

[28] The term "preponderance of the evidence" would ordinarily denote a judge or jury ascertaining the true underlying facts based on its assessment of the weight and credibility of competing evidence. *See Murff v. Pass*, 249 S.W.3d 407, 409 n.1 (Tex. 2008) (per curiam) (defining term as "the greater weight of the credible evidence"); *Herrera v. Stahl*, 441 S.W.3d 739, 741 (Tex. App.—San Antonio 2014, no pet.) (observing, with reference to the TCPA's "preponderance of the evidence" standard, that the phrase's "particular meaning . . . in both civil and criminal cases means the greater weight and degree of credible evidence that would create a reasonable belief in the truth of the claim" (citing *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006))); *see also* Tex. Gov't Code § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."); *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747 & n.25 ( Tex. 2012) (noting preference for common meaning unless technical meaning has been acquired by "legislative definition or otherwise"). The corresponding standards of appellate review give deference to those determinations (especially with regard to the credibility of live witnesses) and presume that the fact-finder resolved any evidentiary conflicts in favor of the findings that it either expressly made or that are implicit in its ultimate ruling. *See, e.g.*, *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). However, while the TCPA seems to allow other forms of "evidence," *see* Tex. Civ. Prac. & Rem. Code § 27.006(b) (contemplating consideration of discovery products), it specifies that a court "shall consider the pleadings and supporting and opposing affidavits stating the facts on which

construction of the statutory language—a question of law that courts review de novo[29]—would be integral to, if not frequently determinative of, the overall analysis.[30]

A "legal action," the first element that a movant must prove, is defined elsewhere in the TCPA to mean "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief."[31] This definition is both expansive and varied, referring to an entire action or proceeding ("lawsuit"); particular pleading

---

the liability or defense is based," *see id.* § 27.006(a), an exception to the general rule that pleadings are not evidence. *See Rio Grande H20 Guardian v. Robert Muller Family P'ship, Ltd.*, No. 04–13–00441–CV, 2014 WL 309776, at *3 (Tex. App.—San Antonio Jan. 29, 2014, no pet.) (mem. op.) (observing that "[u]nlike other types of cases where pleadings are not considered evidence, section 27.006 . . . expressly provides" that "we may consider the pleadings as evidence in this case"). This emphasis on pleadings and affidavits as "evidence" seems to contemplate an analysis more closely akin to that governing evidence-based pleas to the jurisdiction under *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). Under *Miranda*, the factual allegations in the claimant's pleadings are liberally construed in favor of jurisdiction, presumed true unless negated by evidence, and any evidence is viewed in the light most favorable to the claimant, in a manner similar to summary-judgment practice. *See id*. at 226–27; *Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 512–13 (Tex. App.—Austin 2010, no pet.). The First Court of Appeals, in fact, has appeared to apply a version of the *Miranda* analysis when reviewing rulings on TCPA dismissal motions, viewing the pleadings and any other "evidence" in the light most favorable to the non-movant. *See Crazy Hotel*, 416 S.W.3d at 80–81 (citing *Miranda*, 133 S.W.3d at 227); *accord Cheniere Energy*, 449 S.W.3d at 214 ("we are to view the pleadings and evidence in the light most favorable to the non-movant").

Under either standard of review, the Court would view the pleadings and evidence in the light most favorable to the Blunts, who are both the non-movants and the prevailing parties below.

[29] *See, e.g.*, *Entergy*, 282 S.W.3d at 437.

[30] *See Better Bus. Bureau of Metro. Houston, Inc. v. John Moore Servs., Inc.*, 441 S.W.3d 345, 352–53 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) (describing review of trial court determination regarding TCPA movant's initial burden as "de novo as an application of law to facts" and citing *Crazy Hotel*, 416 S.W.3d at 80, for support).

[31] Tex. Civ. Prac. & Rem. Code § 27.001(6).

instruments and claims for relief ("petition, complaint, cross-claim, or counterclaim," plus the catch-all of "any other judicial pleading or filing that requests legal or equitable relief"); and also "cause of action," which generally denotes particular facts that would entitle a person to seek some form of legal or equitable relief.[32] Further, as some of our sister courts have observed, "legal action" would facially encompass even motions, such as those seeking summary judgment or sanctions, at least to the extent that relief would be considered "legal or equitable relief."[33] By the same logic, even dismissal motions asserted under the TCPA itself would qualify as "legal actions," if dismissal with cost-shifting and sanctions can be considered "legal or equitable relief." Accordingly, it should perhaps come as no surprise that at least one clever litigant has already tried to use a TCPA dismissal motion to obtain dismissal of an opponent's previously filed TCPA dismissal motion.[34]

The breadth of this "legal action" definition is checked somewhat by section 27.010 of the TCPA, which excepts a few categories of "legal actions" from the Act based on their subject

---

[32] *See id.* § 27.001(6); *see also Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563–71 (Tex. 2014) (plurality op.) (discussing at length the distinctions between an "action," "lawsuit," or "proceeding" and a "cause of action" (citing *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012); *A. H. Belo Corp. v. Blanton*, 129 S.W.2d 619, 621 (Tex. 1939); *Magill v. Watson*, 409 S.W.3d 673, 679 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *City of Texarkana v. Cities of New Boston*, 141 S.W.3d 778, 788 (Tex. App.—Texarkana 2004, no pet.); *Bell v. Moores*, 832 S.W.2d 749, 752 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Elmo v. James*, 282 S.W. 835, 839 (Tex. Civ. App.—Fort Worth 1926, writ dism'd w.o.j.))).

[33] *See In re Estate of Check*, 438 S.W.3d 829, 836 (Tex. App.—San Antonio 2014, no pet.) (observing that "pleadings" that "seek legal or equitable relief" and therefore qualify as "legal actions" under the TCPA would facially include, "e.g., motions for sanctions [and] motions for summary judgment").

[34] *See Hotchkin v. Bucy*, No. 02–13–00173–CV, 2014 WL 7204496, at *1 (Tex. App.—Fort Worth Dec. 18, 2014, no pet.) (mem. op.) (illustrating use of same construction as predicate for TCPA dismissal motion aimed at another TCPA dismissal motion).

11

matter.[35]  For example, section 27.010 exempts "legal actions" seeking recovery for "bodily injury" from the Act, along with "statements made regarding that legal action."[36]  None of section 27.010's exceptions are directly implicated by this case, but it speaks volumes about the range of "legal actions" subject to dismissal under this "anti-SLAPP" law that the TCPA's drafters perceived a need to explicitly carve out money-damages suits arising from car wrecks, slip-and-falls, and the like.

As for the "exercise of the right of free speech, right to petition, or right of association," these terms correspond to the "constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government" that section 27.002 indicates the TCPA as a whole is intended to "encourage and safeguard."  But while these rights each have content and meaning derived from constitutional text and longstanding interpretive jurisprudence, the Legislature has nonetheless seen fit to provide explicit "definitions" of conduct that qualifies as the "exercise of" each right for TCPA purposes.[37]

"Exercise of the right of association" as defined in the TCPA "means a communication between individuals who join together to collectively express, promote, pursue, or defend common interests."[38]  "Exercise of the right of free speech," in turn, "means a communication made in connection with a matter of public concern,"[39] and "matter of public concern" is itself defined to "include[] an issue related to:  (A) health or safety; (B) environmental, economic, or

---

[35]  *See* Tex. Civ. Prac. & Rem. Code § 27.010.

[36]  *Id*. § 27.010(c).

[37]  *See id.* § 27.001(2)–(4).

[38]  *Id*. § 27.001(2).

[39]  *Id*. § 27.001(3).

community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace."[40]  Of more immediate relevance to this case is the TCPA's definition of the "exercise of the right to petition":

"Exercise of the right to petition" means any of the following:

(A)      a communication in or pertaining to:

(i)       a judicial proceeding;

(ii)      an official proceeding, other than a judicial proceeding, to administer the law;

(iii)     an executive or other proceeding before a department of the state or federal government or a subdivision of the state or federal government;

(iv)      a legislative proceeding, including a proceeding of a legislative committee;

(v)       a proceeding before an entity that requires by rule that public notice be given before proceedings of that entity;

(vi)      a proceeding in or before a managing board of an educational or eleemosynary institution supported directly or indirectly from public revenue;

(vii)     a proceeding of the governing body of any political subdivision of this state;

(viii)    a report of or debate and statements made in a proceeding described by Subparagraph (iii), (iv), (v), (vi), or (vii); or

(ix)      a public meeting dealing with a public purpose, including statements and discussions at the meeting or other matters of public concern occurring at the meeting;

---

[40]  *Id*. § 27.001(7).

(B)     a communication in connection with an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(C)     a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding;

(D)     a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding; and

(E)     any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.[41]

A "communication"—the act that distinguishes "the exercise of" each of the rights within each of their respective definitions—is defined in the TCPA to "includ[e] the making or submitting of a statement or document, in any form or medium, including oral, visual, written, audiovisual, or electronic."[42]

As for the required relationship between a "legal action" as defined in the Act and the "exercise of the right to petition," "speech," or "assembly" as defined in the Act, "is based on, relates to, or is in response to" is not similarly defined, nor are any of the component terms. However, some possible hints as to the intended meaning of this undefined provision can be found in other portions of the TCPA. Section 27.006 of the TCPA, titled "Evidence," instructs that "[i]n determining whether a legal action should be dismissed under this chapter, the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability

---

[41] *Id*. § 27.001(4).

[42] *Id*. § 27.001(1).

14

or defense is based."[43]  The same provision also affords trial courts discretion to permit discovery (which the Act generally prohibits while a dismissal motion is pending[44]) that is "specific and limited [and] relevant to the motion,"[45] implying that trial courts may consider additional evidence and issues beyond "the pleadings and . . . affidavits stating the facts on which the liability or defense is based."  Then, in section 27.007, titled "Additional Findings," the Act provides that the movant may, upon motion, require a court deciding a dismissal motion to "issue findings regarding whether the legal action was brought to deter or prevent the moving party from exercising constitutional rights and is brought for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation."[46]

Section 27.007 is the closest the TCPA comes to mentioning SLAPPs explicitly, contemplating that trial courts will hear evidence and make findings as to whether a "legal action" has been asserted with the sorts of subjective aims characteristic of that type of litigation abuse.[47]  But by referring to these issues in terms of "additional" findings that courts consider upon motion, section 27.007 would seem to imply that these issues are not a normal or required part of the court's inquiry when deciding dismissal motions generally.  The focus of that general or default inquiry

---

[43]  *Id*. § 27.006.

[44]  *Id*. § 27.003(c).

[45]  *Id*. § 27.006(b).

[46]  *Id*. § 27.007.

[47]  *See supra* notes 5, 8–9 and accompanying text.

would instead seem to be that contemplated by section 27.006—"*the facts on which the liability or defense is based.*"[48]

This view of the "is based on, relates to, or is in response to" element is generally consistent with the manner in which Texas appellate courts, including this Court, have construed and applied it (although, as with many other issues presented by the Act, the Texas Supreme Court has yet to speak). These courts have uniformly deemed it sufficient that a challenged "legal action" seeks relief predicated on alleged injury from some communication that can be said to fall within the TCPA's definitions of the "exercise of the right to petition," speech, or association.[49] That is, the focus has been solely on the factual allegations underlying the challenged "legal action" and whether they correspond to one of the Act's definitions of protected conduct, with no consideration of a party's subjective aims in asserting the "legal action." A common application of this analysis—perhaps the most common—has been to hold (often almost automatically) that a defamation claim (which by definition complains of some oral or written statement that will

---

[48] Tex. Civ. Prac. & Rem. Code § 27.006(a) (emphasis added).

[49] *See Combined Law Enforcement Ass'ns of Tex. v. Sheffield*, No. 03-13-00105-CV, 2014 WL 411672, at *5 (Tex. App.—Austin Jan. 31, 2014, pet. filed) (looking to whether the "communications . . . that Sheffield [the plaintiff and nonmovant] alleges to be defamatory fall within the TCPA's definition of the exercise of the right of association"); *Kinney*, 2014 WL 1432012, at *5 (similarly focusing on the communications that were alleged to be defamatory and tortious and whether those qualified as the "exercise of the freedom of speech"); *accord, e.g.*, *James v. Calkins*, 446 S.W.3d 135, 147–48 (Tex. App.—Houston [1st Dist.] 2014, pet. filed); *Young v. Krantz*, 434 S.W.3d 335, 342 (Tex. App.—Dallas 2014, no pet.); *KBMT Operating Co., LLC v. Toledo*, 434 S.W.3d 276, 281, 283–84 (Tex. App.—Beaumont 2014, pet. granted); *Rio Grande H2O*, 2014 WL 309776, at *3; *Sierra Club v. Andrews Cnty.*, 418 S.W.3d 711, 716–17 (Tex. App.—El Paso 2013, pet. filed); *In re Lipsky*, 411 S.W.3d at 542; *Avila v. Larrea*, 394 S.W.3d 646, 650, 655 (Tex. App.—Dallas 2012, pet. denied).

frequently fall within the Act's "exercise of the right of free speech" definition) is, for that reason alone, a "legal action" that "is based on, relates to, or is in response to" that protected conduct.[50]

In her dismissal motion, Serafine asserted that the Blunts' counterclaims seeking (1) damages under a tortious-interference theory and (2) damages and attorney's fees under Chapter 12 of the Civil Practice and Remedies Code[51] are each "based on," "relate to," or are "in response to" her "exercise of the right of petition" by filing her lawsuit and related lis pendens notice. She did not, significantly, assert any other form of the "exercise of the right to petition" as a basis for her motion, nor any purported "exercise of the "right of association" or "exercise of the right of free speech." Serafine's claims for appellate relief must stand or fall solely on the limited theories she did assert, as the Court recognizes.[52]

---

[50] *See, e.g.*, *Kinney*, 2014 WL 1432012, at \*5; *Avila*, 394 S.W.3d at 655.

[51] *See* Tex. Civ. Prac. Rem. Code §§ 12.002, .003(a)(8), .006. The Blunts asserted additional counterclaims that Serafine did not challenge in her motion. Specifically, the Blunts sought attorney's fees made available under two statutes that Serafine had pleaded as bases for her own claims for relief: (1) chapter 16 of the Property Code, the trespass-to-try title statute, which requires an award of attorney's fees for a record title owner (here, the Blunts) who prevails in a suit for possession of real property against one claiming by adverse possession (as Serafine does), *see* Tex. Prop. Code § 16.034(a); and (2) the Uniform Declaratory Judgments Act, *see* Tex. Civ. Prac. & Rem. Code § 37.009 ("In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."). These additional claims remain pending in the district court and are not implicated by the order on appeal. The Court's analysis correctly reflects the limited scope of Serafine's motion.

[52] *See Sheffield*, 2014 WL 411672, at \*4; *see also* Tex. R. App. P. 33.1 (error preservation). And, as the Court likewise seems to recognize, the grounds for dismissal Serafine preserved must be analyzed separately with respect to each of the challenged counterclaims. *See Better Bus. Bureau of Metro. Dallas, Inc. v. Ward*, 401 S.W.3d 440, 443 (Tex. App.—Dallas 2013, pet. denied) (observing that the TCPA's definition of "legal action" is "broad and evidences a legislative intent to treat any claim by any party on an individual and separate basis").

The Court correctly holds that the challenged counterclaims are each a "legal action"—the Act's broad definition of that term explicitly includes counterclaims, after all.[53] I also agree with the Court's conclusion that Serafine's lawsuit and related lis pendens notice qualify as the "exercise of the right to petition" under the TCPA as a matter of law. However, as I explain in Part II below, this definition is not so broad as the Court's analysis might imply, nor is construction and application of it so straightforward. As for whether either "legal action" "is based on, relates to, or is in response to" Serafine's "exercise of the right to petition," the Court appears to apply the so-far prevailing construction to conclude that the Blunts' counterclaims under Chapter 12 are "based on, relate[d] to, or [are] in response to" Serafine's lis pendens filing because they seek relief factually predicated on that filing.[54] It similarly reasons that the Blunts' tortious-interference claim is partly "based on, relates to, or is in response to" Serafine's lawsuit because the Blunts' pleadings complain explicitly of the lawsuit as a component of the alleged interference, but that other allegations of interference by threats did not, at least in the posture of this appeal, implicate any activity protected by the Act.[55] In distinguishing between these alternative protected and unprotected factual bases underlying the Blunts' tortious-interference claim, the Court implicitly resolves,

---

[53] *See* Tex. Civ. Prac. & Rem. Code § 27.001(6).

[54] *Ante*, at 10.

[55] *Id*.; *cf. Sierra Club*, 418 S.W.3d at 716–17 (holding that movant association met its initial burden under the TCPA by showing nonmovant's declaratory-judgment suit complained in part of movant's threats of litigation). The Blunts presented evidence that Serafine made threats against them that included, but were not limited to, the threat of litigation. In either event, the Court has no occasion to address whether any such threats by Serafine, directed as they were to private parties rather than the government, would suffice as the "exercise of the right to petition" had that argument been preserved.

18

and correctly so, the so-called "mixed-claim" issue under the TCPA, as I explain in Part IV. And because none of the parties have argued or even suggested that "is based on, relates to, or is in response to" could mean anything other than the prevailing view the Court has followed, I am content to do the same here. However, as I explain in Part III, the precise meaning of "is based on, relates to, or is in response to" is best considered yet another open question under the TCPA—and a vexing one at that.

In light of these conclusions, the district court was required to dismiss the Blunts' counterclaims under Chapter 12 and, to the extent it complains of Serafine's lawsuit, their tortious-interference claim unless the Blunts could "establish[] by clear and specific evidence a prima facie case for each essential element of the claim in question."[56] This "clear and specific evidence of a prima facie case" standard has created its own set of interpretive difficulties,[57] but the Texas Supreme Court has, fortunately, had the opportunity to give guidance in *In re Lipsky*.[58] The majority's analysis here is consistent with *Lipsky* and, under that standard, I agree that the district court erred in failing to dismiss the Blunts' Chapter 12 claims and the relevant portion of their tortious interference claim.[59] Thus, I join in the Court's judgment.

---

[56] Tex. Civ. Prac. & Rem. Code § 27.005(b)–(c).

[57] *See In re Lipsky*, __S.W.3d__, No. 13-0928, 2015 WL 1870073, at * 4–5 (Tex. Apr. 24, 2015, orig. proceeding) (noting conflict among courts of appeals regarding TCPA's "clear and specific evidence" requirement).

[58] *See id.* at 13 (holding that "clear and specific evidence" "does not impose an elevated evidentiary standard or categorically reject circumstantial evidence").

[59] *Ante*, at 5–6.

But more significant than the judgment itself is what this outcome says about the breadth of the TCPA as written and the statute's relationship to any perceived or desired objective of combating SLAPP litigation. In terms of achieving any "anti-SLAPP" goal or effect, the TCPA's framework might be said to, at most, ferret out a range of "legal actions" that are *presumed* to be SLAPPs by virtue of their subject matter—i.e., those "based on, relat[ing] to, or . . . in response to" (in the sense of having as its factual predicate) some sort of "communication" that appears within the definition of the "exercise of the right of free speech," "exercise of the right to petition," or "exercise of the right of association"—combined with the inability of the proponent to make the required showing "by clear and specific evidence a prima facie case for each essential element of the claim in question." In this respect, the TCPA has some similarities to the procedural requirements under the Medical Liability Act,[60] which seek to identify, quickly eliminate, and deter frivolous lawsuits against health care providers by requiring a plaintiff asserting a "health care liability claim" to serve an "expert report" early in the case sufficient to demonstrate the claim's potential merit and presumes that failure "'means that the claim is either frivolous, or at best has been brought prematurely.'"[61] But while the TCPA might indeed capture some "legal actions" that are truly SLAPPs as conventionally understood, the vastness of the range of "legal actions" that are deemed suspect by this statutory framework and ultimately excised from the civil justice system ensures that

---

[60] *See generally* Tex. Civ. Prac. & Rem. Code §§ 74.001–.507 (provisions of Medical Liability Act).

[61] *Scoresby v. Santillan*, 346 S.W.3d 546, 554 (Tex. 2011) (describing the purpose and effect of the expert-report requirement and quoting *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001)); *see* Tex. Civ. Prac. & Rem. Code § 74.351 (Medical Liability Act provision requiring expert report in health care liability claims).

the Act will operate arbitrarily in relation to any "anti-SLAPP" goal in many, if not most, of the cases to which it applies. This case is a good illustration.

Serafine has not preserved any contention that the Blunts asserted their counterclaims with the objective of punishing or chilling her exercise of expressive freedoms, as might be characteristic of a SLAPP. Her argument, rather, is merely to the effect that the TCPA, as written, provides her (however fortuitously) with a tactical advantage that she is entitled to wield in her lawsuit against the Blunts. The Blunts' sin, in other words, is not that they asserted a "legal action" that anyone contends is truly a SLAPP in the conventional sense, but merely that they pleaded compulsory counterclaims that happened to implicate the TCPA (at least in part) and that they could not overcome the "prima facie case" requirement.

Conversely, it is arguably the claims asserted by Serafine that more closely resemble the SLAPP paradigm, at least if one credits the Blunts' account of the events preceding her lawsuit. During the hearing on Serafine's motion, the Blunts presented evidence that Serafine had a years-long prior history of exhibiting extreme animosity toward their family, with frequent episodes of vexatious and spiteful behavior. Among other nettlesome conduct, according to Alexander Blunt, Serafine has "basically ke[pt] a 24-hour watch on our property border" and has "harassed me for years" for matters as trifling as his "using leaf blowers." This pattern of behavior, according to Mr. Blunt, continued and intensified once the Blunts began planning and trying to construct their new drainage system—despite their having made Serafine aware that the work was necessary to eliminate a persistent flooding problem that was damaging the pier-and-beam foundation of their house. "During the installation," he testified," Serafine "continually harassed the employees of Austin Drainage and interfered with their work to the point that Austin Drainage would no longer

21

continue work on the project," "[o]n a daily basis . . . stalked the employees . . . and walked the property line to make her presence known," and "did everything in her power to stall the work." Mr. Blunt further emphasized that Serafine's "threats" and related conduct had begun "well before" she filed suit. Some further illumination regarding the nature of Serafine's lawsuit may also be found in her live pleadings—alongside her claims based on alleged infringements of her property rights, Serafine airs a litany of grievances against the Blunts that include perceived "surreptitious video taping" of her and "several instances of insult, ridicule, and, [Serafine] believes, marshaling of neighborhood gossip against [her]."[62]

While Serafine's conduct would implicate liberty or property interests of the Blunts rather than the free expression that is the TCPA's focus, this evidence, viewed in the light most favorable to the Blunts,[63] could support a reasonable inference that Serafine's pattern of conduct toward the Blunts is motivated, at least in part, by the sort of harm-for-harm's sake animus that is characteristic of SLAPP litigation. Yet it is Serafine's claims that are exalted and protected as the "exercise of the right to petition" under the TCPA, in derogation of the Blunts' rights.

As a final general observation regarding the TCPA's impact, the statute, whatever its merits as an "anti-SLAPP" mechanism, has certainly proven itself to be an extraordinarily powerful tool for media defendants to use in combating defamation claims.[64]

---

[62] Serafine, a self-described "non-practicing attorney," filed these pleadings pro se, but later obtained counsel who represented her in connection with her TCPA dismissal motion. She is represented by different counsel on appeal.

[63] *See supra* note 28.

[64] *See Shipp*, 439 S.W.3d at 442 (reversing trial court to render judgment dismissing plaintiff's case against media defendant); *Crazy Hotel*, 416 S.W.3d at 90; *Avila*, 394 S.W.3d at 662

22

**THE TCPA'S "EXERCISE OF THE RIGHT TO PETITION" DEFINITION BROADLY PROTECTS LAWSUITS—POSSIBLY EVEN FRIVOLOUS LAWSUITS—BUT IT IS STILL NOT AS BROAD AS THE COURT SUGGESTS**

Echoing Serafine's arguments, the majority perceives that judicial inquiry as to whether Serafine's lawsuit and lis pendens qualify as the "exercise of the right to petition" begins and immediately ends with subparagraph (A)(i) of the TCPA's definition of that term: "*a communication in or pertaining to . . . a judicial proceeding.*"[65] This view is not unprecedented among Texas courts of appeals. At least two of our sister courts have reasoned similarly that the filing of a lawsuit or lis pendens notice qualifies as the "exercise of the right to petition" under a straightforward, "plain-meaning" reading of "a communication in or pertaining to . . . a judicial proceeding," with no deeper digging warranted.[66] And additional court of appeals decisions,

_____

(reversing trial court order denying media defendant's motion to dismiss under TCPA); *but see KBMT*, 434 S.W.3d at 290 (affirming trial court order denying media defendant's motion to dismiss under TCPA); *see also BH DFW*, 402 S.W.3d at 299 (dismissing under TCPA claims brought against BBB regarding its accreditation); *Ward*, 401 S.W.3d at 445 (same); *John Moore*, 441 S.W.3d at 362 (same).

[65] *See ante*, at 9–10 (quoting Tex. Civ. Prac. & Rem. Code § 27.001(4)(A)(i) (emphasis added)).

[66] *See James*, 446 S.W.3d at 147–48 (holding that fraud and barratry claims predicated on attorney's representations in lawsuit pleadings, along with related lis pendens filing, were "based on, relate[d] to, or [were] in response to" movants' "exercise of the right to petition," namely, "communication[s] in or pertaining to a judicial proceeding"); *Rio Grande H20*, 2014 WL 309776, at *3 (petition, included in the pleadings on file, singularly "established that [the plaintiffs] were exercising their right to petition in filing the lawsuit" to challenge zoning ordinances, and tortious-interference and conspiracy claims complaining of the suit were "based on, relate[d] to, or [were] in response to" that "exercise").

including some from this Court, have followed a similar analytical approach when construing the TCPA's definitions of the "exercise of the right of free speech" or the "exercise of the right of association."[67]

While such an approach may at first blush seem justified by unambiguous language within the definitions, some remarkable implications of that analysis should give courts greater pause. If read literally, what would initially seem to be the plain meaning of a "communication in or pertaining to . . . a judicial proceeding" (and, in turn, the "exercise of the right to petition") would, standing alone, encompass a virtually limitless range of writings and statements related to a court case. Written "communications" "in" a "judicial proceeding" would include, to name but a few examples, cover letters, fax transmittal pages, or vacation letters.[68] Written communications

---

In addition to those decisions, the Eighth Court of Appeals has similarly reasoned that a movant's *threats* of litigation suffice as the "exercise of the right to petition" under the TCPA. *See Sierra Club*, 418 S.W.3d at 716–17. But Serafine, again, has not preserved any such contention here.

[67] *See, e.g.*, *Neyland v. Thompson*, No. 03-13-00643-CV, 2015 WL 1612155, at *4 (Tex. App.—Austin Apr. 7, 2015, no pet. h.) (mem. op.) (reasoning that communications between members of an HOA were "between individuals who join together to collectively express, promote, pursue or defend common interests" so as to qualify as the "exercise of the right of association," and public statements members made regarding internal HOA dispute related to "economic and community well-being" so as to be the "exercise of the right of free speech"); *Kinney*, 2014 WL 1432012, at *5 ("Under [the TCPA's definition of the 'exercise of the freedom of speech'], a communication need only be 'in connection with a matter of public concern,' which includes issues 'related to a good, product, or service in the marketplace.' The record shows that Kinney's online statements related to services BCG provides to the public and that BCG's claims are based on those statements. Considering the plain language of the TCPA . . . we conclude that Kinney has met his initial burden of showing by a preponderance of the evidence that his statements were made in connection with a matter of public concern and that this action relates to those statements so that the TCPA applies.").

[68] *See Neyland*, 2015 WL 1612155, at *11 (Field, J., concurring) (making the same observations).

"pertaining" to a judicial proceeding would sweep more broadly still, encompassing even communications directed solely between private parties that happen to refer to some sort of judicial proceeding, even one in which the communicating parties have no involvement.[69] The definition would likewise capture emails or other electronic communications that met this description. And one cannot begin to fathom the outer limits of oral communications that would qualify under a literal reading of the definition.

It occurs to the author that if he awoke early one weekday morning, rolled over in bed, and mentioned to his lovely and ever-tolerant wife that he would be hearing oral argument in yet another appeal under the TCPA later that day, he could be said to have "exercised [his] right to petition" in this sense by uttering an oral "communication" "pertaining to" a "judicial proceeding." For that matter, the author seemingly would have likewise "exercised [his] right of free speech" through the same utterance, as it was "made in connection with a matter of public concern," a TCPA appeal in court that could be said to be or involve an "issue related to," inter alia, "the government," "a public official or public figure," or "community well-being."[70] And if the author's wife responded by reminding him that, however fascinating or significant TCPA cases may be, he has been earning only a judicial salary for almost twelve years now, it would seem that she would have, similarly, exercised her "right of free speech" by "communicating" regarding an "issue related to . . . economic . . . well-being."[71] And to the extent a marital relationship could be considered "individuals who join

---

[69] *See id.*

[70] Tex. Civ. Prac. & Rem. Code § 27.001(3), (7).

[71] *Id.* § 27.001(7).

together to collectively express, promote, pursue, or defend common interests" (and one would hope that a marriage would work that way), these same "communications" would also seem to qualify as the "exercise of the right of association," too.[72]

These implications of a literal reading of the TCPA's definitions cannot be dismissed as merely speculative or far-fetched—real-life recent opinions from this Court (albeit memorandums) would logically support several of these conclusions.[73] Prior to the TCPA, it never would have dawned on the author that Texans could exercise so many of their cherished freedoms of expression even before their feet hit the floor each morning.

But the notion that the TCPA has such an effect should signal courts that they may have faltered into a "blindly narrow and out-of-context reading[] of statutory language."[74] It is true, of course, that this Court is to regard unambiguous statutory text as the surest guide to the Legislature's intent,[75] and that we are to utilize any definitions the Legislature has provided us when determining the meaning of a statutory word or phrase.[76] Yet as the Texas Supreme Court has also reminded us recently:

---

[72] *See id*. § 27.001(2).

[73] *See Neyland*, 2015 WL 1612155, at *4 (reasoning that HOA membership qualified as "common interests" for purposes of "exercise of the right of association" definition and that internal HOA dispute sufficed as relating to "economic and community well-being" for purposes of the "exercise of the right of free speech"); *cf. id*. at *11 & n.1 (Field, J., concurring) (disputing some of these conclusions).

[74] *Alejos v. Texas*, 433 S.W.3d 112, 121 (Tex. App.—Austin 2014, no pet.).

[75] *See supra* note 15 and accompanying text.

[76] *See, e.g.*, Tex. Gov't Code § 311.011(b); *TGS-NOPEC*, 340 S.W.3d at 439 ("If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage." (citing *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002))).

When construing statutes, or anything else, one cannot divorce text from context. The meaning of words read in isolation is frequently contrary to the meaning of words read contextually in light of what surrounds them. Given the enormous power of context to transform the meaning of language, courts should resist rulings anchored in hyper-technical readings of isolated words or phrases. The import of language, plain or not, must be drawn from the surrounding context, particularly when construing everyday words and phrases that are inordinately content-sensitive.[77]

Thus, we do not examine individual statutory provisions in isolation, but construe statutes as a whole, giving effect to every part.[78] We likewise consider whether the meaning of statutory language is informed by "laws on the same or similar subjects" or other background law, of which we are to presume the Legislature had full knowledge.[79] And while we are to apply legislative definitions of statutory terms in lieu of the their "ordinary meaning,"[80] the supreme court has also instructed that "[c]ourts should not consider the meaning of the term to be defined in total isolation from its

---

[77] *In re Office of the Attorney Gen.*, No. 14-0038, 2015 WL 392969, at *2 (Tex. Jan. 30, 2015) (per curiam); *see, e.g.*, *TGS-NOPEC*, 340 S.W.3d at 441 ("It is a fundamental principle of statutory construction and indeed of language itself that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used.").

[78] *See, e.g.*, *City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 641 (Tex. 2013) ("We examine statutes as a whole to contextually give meaning to every provision."); *Bridgestone/Firestone, Inc. v. Glyn–Jones*, 878 S.W.2d 132, 133 (Tex. 1994) ("Words in a vacuum mean nothing. Only in the context of the remainder of the statute can the true meaning of a single provision be made clear.").

[79] *See In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (quoting *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)); *see also* Tex. Gov't Code § 311.023(4) (in construing statute, court may consider "common law or former statutory provisions, including laws on the same or similar subjects").

[80] *See* Tex. Gov't Code § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."); *TGS-NOPEC*, 340 S.W.3d at 439 ("If a statute uses a term with a particular meaning or assigns a particular meaning to a term, we are bound by the statutory usage.").

common usage" and should "presume that a definition of a common word accords with and does not conflict with the ordinary meaning unless the language clearly indicates otherwise."[81]

We must, in short, look beyond what may initially seem to be the plain or obvious import of the phrase "communication in or pertaining to . . . a judicial proceeding" as it appears when read in isolation. We must instead determine its meaning against a broader contextual backdrop of the TCPA read as a whole and in light of background law. When doing so, it becomes apparent that the TCPA's use of the term "exercise of *the right to petition*," like "exercise of *the right of free speech*" and "exercise of *the right of association*," evokes "particular terms from the Texas and United States Constitutions," with "particular meanings given those terms over centuries of jurisprudence."[82]

The "right to petition" under the federal Constitution, found in the First Amendment,[83] "is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression" of the People in a specific context—seeking remedy for grievances and otherwise communicating their will to government officials.[84] The right is also said to be "implicit in '[t]he very idea of government, republican in form.'"[85]

---

[81] *In re Ford Motor Co.*, 442 S.W.3d 265, 271 & n.20 (Tex. 2014) (citing Antonin Scalia & Bryan A. Garner, *Reading Law* 232 (2012)).

[82] *Jardin v. Marklund*, 431 S.W.3d 765, 772 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

[83] *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances.").

[84] *McDonald v. Smith*, 472 U.S. 479, 482 (1985).

[85] *Id.* (quoting *United States v. Cruikshank*, 92 U.S. 542, 552 (1875)). The counterpart protection under the Texas Constitution is found in Article I, Section 27. *See* Tex. Const. art. I, § 27

The text of the TCPA as a whole confirms, rather than refutes, that the Legislature intended to incorporate this established understanding of this constitutional "right to petition" when defining the "exercise of the right to petition," as opposed to creating some sort of *sui generis* innovation.[86] Subparagraphs (B), (C), and (D) of the "exercise of the right to petition" definition explicitly contemplate either the direct petitioning of government for action or redress on particular "issues"[87] or the sorts of collateral actions aimed at influencing public opinion in support of petitioning that which the U.S. Supreme Court has long been held to be within the First Amendment

---

("The citizens shall have the right, in a peaceable manner, to . . . apply to those invested with the powers of government for redress of grievances or other purposes, by petition, address or remonstrance."). Neither side has suggested there is any material substantive difference between the two, nor am I aware of any, and it seems safe to assume there is none. *See Jardin*, 431 S.W.3d at 773 (stating that "Texas constitutional provisions guaranteeing freedom of expression and assembly are coextensive with the corresponding federal guarantees" (citing *Puckett v. State*, 801 S.W.2d 188, 192 (Tex. App.—Houston [14th Dist.] 1990), *cert. denied*, 502 U.S. 990 (1991))); *cf. Bentley v. Bunton*, 94 S.W.3d 561, 577–78 (Tex. 2001) (noting that where parties do not argue that differences in state and federal constitutional guarantees are material to case, and none is apparent, "we limit our analysis to the First Amendment and simply assume that its concerns are congruent with those of article I, section 8"). Accordingly, I do not separately address the implications of the Texas provision.

[86] *See Ford*, 442 S.W.3d at 271 ("Courts should not consider the meaning of the term to be defined in total isolation from its common usage" and should "presume that a definition of a common word accords with and does not conflict with the ordinary meaning unless the language clearly indicates otherwise.").

[87] *See* Tex. Civ. Prac. & Rem. Code § 27.001(4)(B) ("a communication in connection with an issue under review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding"), (C) ("a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding").

right to petition.[88]  Further confirmation of the Legislature's intent is found in subparagraph (E) of the definition, the final one, which states that "exercise of the right to petition" includes:

> any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.[89]

The phrasing "any *other* communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state" denotes an overlap or nexus between the preceding components of the "exercise of the right to petition" definition—including subparagraph (A)'s "communication in or pertaining to . . ."—and the constitutional concept, if not legislative intent that the definition do no more than identify or emphasize types of communications that are already within the constitutional protection.

This conclusion is also consistent with the TCPA's overarching purpose as stated in section 27.002—"to encourage and safeguard the *constitutional* rights of persons to petition, speak freely, associate freely, and otherwise participate in government . . . ."[90]  Indeed, the Legislature even gave the TCPA the title "Actions Involving the Exercise of Certain *Constitutional* Rights"[91]. Construing the "exercise of the right to petition" so as to extend beyond those constitutional

---

[88]  *See id*. § 27.001(4)(D) ("a communication reasonably likely to enlist public participation in an effort to effect consideration of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding"); *see also Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 137–38 (1961).

[89]  Tex. Civ. Prac. & Rem. Code § 27.001(4)(E).

[90]  *Id*. § 27.002 (emphasis added).

[91]  *See* Citizens Participation Act, 2011 Tex. Gen. Laws at 961.

parameters would also correspondingly disrupt the balance the Legislature intended between protecting constitutional rights and also "protect[ing] the rights of a person to file meritorious lawsuits for demonstrable injury."[92] And this disruption would be considerable if a "communication in or pertaining to . . . a judicial proceeding" is read literally and in isolation to, as previously suggested, encompass a wide array of written, oral, and electronic communications bearing little resemblance to any conventional notion of the constitutional "right to petition." That in itself is a reason to conclude that the Legislature intended no such thing.[93]

In sum, the established understanding of "the right to petition" in constitutional jurisprudence must inform the nature of a "communication in or pertaining to . . . a judicial proceeding" that would qualify as the "exercise of *the right to petition*" as defined in the TCPA. The phrase was not intended to be read in the abstract or isolation so as to cause the TCPA's definition of the "exercise of *the right to petition*" to depart materially from the common and long-familiar understanding of what the "right to petition" means. Against its constitutional backdrop and the TCPA read as a whole, "communication in or pertaining to . . . a judicial proceeding" necessarily refers to the sorts of "communications" "in" or "pertaining to" a "judicial proceeding" that would be protected under the First Amendment right to petition.[94]

---

[92] Tex. Civ. Prac. & Rem. Code § 27.002.

[93] *See, e.g.*, *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008) ("[W]e construe the statute's words according to their plain and common meaning . . . unless such a construction leads to absurd results.").

[94] *Accord Jardin*, 431 S.W.3d at 772 (relying on its understanding of First Amendment concept of "right to petition" to guide construction of TCPA's "exercise of the right to petition"); *see Cheniere Energy*, 449 S.W.3d at 216 (concluding, with respect to TCPA's "exercise of the right of association," that "the stated purpose of the statute indicates a requirement of some nexus

31

As applied to this case, this inquiry distills down further to whether Serafine's lawsuit falls within the First Amendment right to petition government, as Serafine's lis pendens filing is considered merely a component of or adjunct to her lawsuit, a form of public notice intended to protect her alleged rights in the disputed property by putting third parties on notice of her title claims.[95] As previously explained, the First Amendment right to petition has long been held to encompass the filing of a lawsuit[96]—that is, unless the suit is a "sham," one that is (1) "objectively baseless" (i.e., "no reasonable litigant could realistically expect success on the merits") and (2) conceals an attempt to harm a rival directly through the litigation process itself as opposed to the outcome.[97]

The TCPA does not explicitly exclude lawsuits that constitute sham petitioning from the "exercise of the right to petition" definition. However, the limitation would seem to be implicit by virtue of the First Amendment concepts that the definition incorporates. But there is admittedly

---

between the communications used to invoke the TCPA and the generally recognized parameters of First Amendment protections"); *id.* at 217 (Jennings, J., concurring, joined by Sharp, J.) (further emphasizing their view that TCPA must be construed in light of its express purposes to protect only communications that are protected under established understandings of the constitutional freedoms of speech, assembly, and petition). *But cf. Neyland*, 2015 WL 1612155, at *12 & n.2 (Field, J., concurring) (while agreeing with *Cheniere* (and, logically, with me) that TCPA's text must be construed in the context of its purposes, concluding, at least with regard to the "exercise of the right of association," that the Act's explicit text departs from the underlying constitutional concept in some respects).

[95] *See In re Miller*, 433 S.W.3d 82, 85 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("A lis pendens is not an independent claim; it has no existence separate from the lawsuit of which it notifies.").

[96] *See Bill Johnson's Rests.*, 461 U.S. at 741; *California Motor*, 404 U.S. at 510–11.

[97] *Professional Real Estate Investors*, 508 U.S. at 60–61.

some room for debate, especially when one compares the TCPA to similar laws in other states that have been more clear and direct in excluding sham petitioning from their protections.[98]

But the Court does not need to resolve that question in this case because the district court could not have held, at least on this record, that Serafine's lawsuit was a sham. Assuming that the TCPA's "exercise of the right to petition" definition does incorporate the sham litigation limitation from First Amendment jurisprudence, the district court's order denying Serafine's motion could be affirmed based on an implied finding or conclusion that Serafine's lawsuit is not protected as the "exercise of the right to petition" because it is a sham—i.e., it both lacks objective merit and has the purpose only of harming the Blunts through the collateral effects of the litigation process[99]—*if* those findings or conclusions are supported by sufficient evidence.[100]

---

[98] *Cf., e.g.*, 735 Ill. Comp. Stat. Ann. 110/15, 20(c) (authorizing motion to dismiss "a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government . . . *except when not genuinely aimed at procuring favorable government action*, result, or outcome" and placing burden on nonmovant to prove that "the acts of the moving party are not immunized from, or not in furtherance of acts immunized from, liability by this Act") (emphasis added); *see also* Mass. Ann. Laws ch. 231, § 59H (authorizing "special motion to dismiss" "civil claims, counterclaims, or cross claims against [movant that] are based on said party's exercise of the right to petition under the constitution of the United States or of the commonwealth," which shall be granted unless "the party against whom such special motion is made shows that: (1) that the moving party's exercise of its right to petition was *devoid of any reasonable factual support or any arguable basis in law* and (2) the moving party's acts caused actual injury to the responding party") (emphasis added).

[99] *See Professional Real Estate Investors*, 508 U.S. at 60–61.

[100] *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (in absence of findings of fact and conclusions of law, appellate court implies any fact findings necessary to support judgment); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000) ("When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are

The Blunts would have the burden of proof on these issues,[101] although this Court would view the evidence in the light most favorable to them.[102] Although not phrasing their contentions explicitly in terms of "sham" litigation or petitioning, the Blunts have complained in substance that Serafine's claim to title by adverse possession—her core theory—is objectively meritless and that her filings were made only to harass and harm their family.

In addition to the proof of Serafine's motives as previously described, the Blunts' evidence included correspondence reflecting that Serafine had raised a version of her current adverse-possession claim as early as June 2008, when she had objected to the Blunts' plans to replace a preexisting chain-link fence that was located a few feet inside their boundary of record with Serafine's lot. A letter from the Blunts to Serafine, dated June 23, 2008, references and responds to an earlier letter from Serafine, dated June 5, 2008, in which she evidently had insisted that she had acquired title to the land between the record boundary and the fence, as well as the fence itself, by adverse possession.[103] In their letter, the Blunts disputed Serafine's title claim, referencing the legal elements of adverse possession and contending she could not satisfy them. The family particularly emphasized that "[p]ossession of the land must . . . be continuous and uninterrupted, a condition that remains unmet by your 20-year absence from the property since the early 1980's until just recently."

---

meritorious."). Serafine has not appeared to dispute that these general principles of appellate review apply with equal force to trial court orders granting or denying TCPA dismissal motions.

[101] *See Professional Real Estate Investors*, 508 U.S. at 61.

[102] *See supra* note 28.

[103] This letter from Serafine is not in the record, although its contents were referenced in the correspondence that followed.

Serafine replied in a letter dated June 27, also in the record, acknowledging receipt of the Blunts' June 23 letter and, "[w]ithout admitting the correctness of [the Blunts'] specific assertions," stated, "I retract the claims and demands in my June 5 letter."

The Blunts characterize Serafine's June 27, 2008 letter as a "waiver" or acknowledgment of their superior title that is fatal to her current lawsuit and also demonstrates her conscious awareness that her suit lacks merit. It also confirms Serafine's ill intent in prosecuting her suit, they further suggest, especially when considered in conjunction with what they portray as her long history of animosity and spiteful, nettlesome behavior toward them. But while the Blunts' evidence is certainly probative of sham litigation, and may well have been sufficient to support an implied finding by the district court that Serafine's suit was motivated solely by the objective of harming the Blunts through the collateral effects of the litigation process, it nonetheless would fall short of enabling the district court to find or conclude that "no reasonable litigant could realistically expect success on the merits" of her title claim, the other element of the sham-litigation exception.[104]

Even accepting the Blunts characterization of Serafine's letter as an acknowledgment of their superior title, such an acknowledgment occurring in 2008 would have no legal effect if, as Serafine also pled, her limitations title had already vested prior to that time.[105] Serafine bases her adverse-possession claim on her alleged expropriation of the disputed property beginning in the 1970s, roughly forty years before the date of her letter. The Blunts did not come forward with

---

[104] *See Professional Real Estate Investors*, 508 U.S. at 62.

[105] *See, e.g.*, *Republic Nat'l Bank of Dallas v. Stetson*, 390 S.W.2d 257, 259–61 (Tex. 1965) (once limitations title is perfected, it cannot be lost by after-the-fact acknowledgments of the original owner's title). Again, Serafine's pleadings count as "evidence" under the TCPA. *See* Tex. Civ. Prac. & Rem. Code § 27.006(a).

evidence that could demonstrate the absence of an objectively meritorious adverse-possession claim based on those prior events. Similarly, the fact that Serafine had not personally resided on her lot during the intervening years, as the Blunt family asserted in their letter, would not necessarily be fatal to her claim, as one may appropriate property without necessarily residing there, such as through a tenant.[106] Without more, the district court could not have impliedly found or concluded that Serafine's lawsuit lacked any objectively reasonable basis, so as to be sham[107] and thereby fall outside the "exercise of the right to petition" under the TCPA.

While the district court's order could not be affirmed on a sham litigation theory—whether because of the state of the record or because the TCPA does not incorporate the sham litigation limitation at all—the Blunts urge two additional rationales for construing the "exercise of the right to petition" in a manner that would exclude Serafine's lawsuit. Both arguments highlight important features of the TCPA's "exercise of the right to petition" definition that have significant implications for its future application to lawsuits.

First, emphasizing the Legislature's concern with public "participat[ion] in government" as expressed in section 27.002 of the TCPA[108] and the anecdotal legislative history reflecting concerns about SLAPP suits being used to "silence" citizens who are participating in the

---

[106] *See, e.g.*, *Reiter v. Coastal States Gas Producing Co.*, 382 S.W.2d 243, 258 (Tex. 1964) (recognizing adverse possession through tenant possession).

[107] *See Professional Real Estate Investors*, 508 U.S. at 61.

[108] *See* Tex. Civ. Prac. & Rem. Code § 27.002 ("The purpose of this chapter is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and *otherwise participate in government* to the maximum extent permitted by law . . .") (emphasis added).

36

"free exchange of ideas,"[109] the Blunts insist that Serafine's lawsuit should not be considered an "exercise of the right to petition" because it concerns merely a commonplace dispute about property ownership (and, to some degree, personalities) between private parties. The Blunts reason, in other words, that a lawsuit does not qualify as the "exercise of the right to petition" under the TCPA by the bare fact that it is filed with a court or seeks some form of relief there, but must instead have a subject matter that independently concerns governmental action or some similar issue of public import.

The Blunts' argument is consistent with the conventional notion of SLAPP litigation, at least as described in some of the pioneering scholarly articles on the subject. According to these authorities, SLAPPs characteristically target, among other forms of free expression related to government, "being parties in law-reform lawsuits"—i.e., lawsuits seeking to advance or achieve some sort of public-policy goal.[110] But that observation, in itself, is of little help to the Blunts because the Legislature, as already indicated, did not tailor the TCPA textually so as to operate only against the conventional notion of SLAPPs, but drafted it more expansively. However, the Blunts' view finds additional support in an opinion from the Fourteenth Court of Appeals. In *Jardin v. Marklund*, the court attacked at length the notion that the TCPA's protections for the "exercise of the right to petition" can be invoked "simply by filing a petition in a lawsuit between private

---

[109]   *See supra* note 13.

[110]   *See* Pring, 7 Pace Envtl. L. Rev. at 5.

parties."[111]  It observed (correctly, in my view) that the TCPA incorporates, and must be construed in light of, the familiar understanding of the First Amendment "right to petition."[112]  From that premise, the *Jardin* majority reasoned that the rights of petition and free speech under the First Amendment share common conceptual and doctrinal roots and that "public speech" has traditionally been afforded greater protection or weight than "private speech."[113]  From this observation, the majority extrapolated that a similar distinction exists between petitioning about "public" versus "private" issues, such that merely filing a lawsuit would not invoke the constitutional right to petition (and, in turn, the TCPA) unless the suit's subject matter independently concerned government or "the public interest."[114]

As the Blunts suggest, the subject matter of Serafine's lawsuit, while important to the parties and to a Texas civil justice system that provides a forum for our citizens' justiciable controversies of every size,[115] would not otherwise seem to implicate larger issues about government or public policy or the broader "public interest."  However, I am compelled to conclude, based on the TCPA's text and its underlying First Amendment concepts, that the Legislature intended to

---

[111]  *Jardin*, 431 S.W.3d at 769–73.  However, the panel ultimately did not rely directly upon this analysis as the basis for its holdings.  *See id*. at 773.  Two judges joined in the opinion, with the third dissenting without addressing this issue.  *See id*. at 774–76 (Frost, J., dissenting).

[112]  *See id*. at 770–73.

[113]  *See id*. at 770–71 (citing *Dun & Bradstreet*, 472 U.S. at 759).

[114]  *See id*. at 772–73.

[115]  *See* Tex. Const. art. I, § 13 ("All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."); *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993).

protect even this lawsuit concerning an otherwise-private and personal quarrel as a form of the "exercise of the right to petition."

The U.S. Supreme Court has never held that the right of access to courts within the First Amendment right to petition is conditioned on whether the subject matter of a lawsuit or claim independently concerns government or other "public" matters. Rather, its key precedents have recognized that lawsuits to advance private "business or economic interests" can implicate the right of petition.[116] In suggesting otherwise, *Jardin* overlooks this body of jurisprudence, and also that petitioning activity, unlike speech generally, would have a "public" character inherent in the objective or context of the act itself—by definition, petitioning activity seeks to bring about some sort of governmental action.

This same basic distinction between the constitutional status of petitioning activity versus speech generally is reflected in the TCPA's text. As Serafine has emphasized, the TCPA's definition of the "exercise of the right of free speech" is explicitly limited to communications regarding "a matter of public concern,"[117] while the "exercise of the right to petition" definition contains no such element or requirement.[118] Collectively, these features of the TCPA, as informed by the First Amendment concepts it incorporates, are consistent with legislative intent or recognition that the speech that constitutes petitioning under the First Amendment, unlike speech generally, would inherently be of "public concern" and warrant protection without regard to the particular

---

[116]  *See California Motor*, 404 U.S. at 511.

[117]  *See* Tex. Civ. Prac. & Rem. Code § 27.001(2).

[118]  *See id*. § 27.001(4).

39

subject matter being expressed. Likewise, in terms of the overarching statutory goals the Blunts emphasize, First Amendment petitioning activity *is* public "participat[ion] in government" in the eyes of the Framers and, as far as courts can tell from the TCPA's text, the Texas Legislature as well.

It may also be instructive that the California Supreme Court reached the same conclusion concerning a parallel issue under that state's analog to the TCPA.[119] The California statute—section 425.16 of the California Code of Civil Procedure[120]—was one of the earliest "anti-SLAPP" laws and has been a primary model or influence on similar laws subsequently enacted in other states, including, directly or indirectly, the TCPA.[121] To this extent, the Legislature's enactment of the TCPA, with little if any public opposition, represents a notable exception to the antipathy that today's Texas policymakers are sometimes known to express toward the Golden State's regulatory and social policies. Various features of the California statute have also been litigated over the years, and these decisions, like decisions from other states construing similar laws, can sometimes provide guidance regarding comparable TCPA provisions.[122]

---

[119] *See Briggs v. Eden Council for Hope and Opportunity*, 969 P.2d 564, 568–75 (Cal. 1999).

[120] *See* Cal. Civ. Proc. Code § 425.16 ("Anti-SLAPP motion").

[121] *See* 1992 Cal. Legis. Serv. ch. 726 (S.B. 1264) (West).

[122] *See* Tex. Gov't Code § 311.023 (Code Construction Act provision allowing consideration of "common law or former statutory provisions, including laws on the same or similar subjects"). But that is not to say that the TCPA is comparable to the California "anti-SLAPP" law (or that of any other state) in all material respects, nor that textually similar provisions must necessarily be construed the same way. This Court did not hold otherwise in *Kinney*, despite its use of the descriptor "essentially identical California anti-SLAPP statute" in a parenthetical following a citation to a California case." *Kinney*, 2014 WL 1432012, at *6. This reference appears within an analysis of TCPA Section 27.010, and this context demonstrates that the Court was not drawing any broader comparisons between the two statutes. *See id*.

The California statute, like the TCPA, defines the expression protected by the statute in a manner that distinguishes petitioning activity from speech generally, includes an explicit "public interest" or "public concern" element in the definition of protected speech, but includes no such limitation in regard to petitioning.[123] However, the California statute, unlike the TCPA, also includes a "public interest" element in the statutory provision authorizing a dispositive motion against legal actions deemed to infringe some type of protected expression, providing a "special motion to strike" against "[a] cause of action against a person arising from any act by the person in furtherance of the person's right of petition or free speech under the United States or California Constitution *in connection with a public issue*."[124] That qualifier and its arguable inconsistency with the statute's definition of protected petitioning bred confusion as to whether parties moving to strike based on petitioning activity (defined, again, in a manner that did not include an explicit "public interest" or "public concern" element) nonetheless had to show their petitioning was "in connection with a public issue" in order to obtain dismissal. The California Supreme Court concluded they did not.[125] Emphasizing the omission of a "public interest" or "concern" element from the statute's definition of petitioning activity, the court reasoned in part:

> "Under the plain terms of the statute it is the context or setting itself that makes the issue a public issue: all that matters is that the First Amendment activity take place in an official proceeding or be made in connection with an issue being reviewed by an official proceeding. . . . The Legislature when crafting the clause two definition clearly and unambiguously resorted to an easily understandable concept of what

---

[123] *See* Cal. Civ. Proc. Code § 425.16.

[124] *Id.* § 425.16(b)(1) (emphasis added).

[125] *See Briggs*, 969 P.2d at 568–75.

41

constitutes a public issue. Specifically, it *equated* a public issue with the authorized official proceeding to which it connects."[126]

The same reasoning would apply to the TCPA's definition of "exercise of the right to petition"—the "participation in government" or "public interest" feature of the expression would be inherent in the fact that it is communicated to or in a governmental forum.

In short, the TCPA does not provide any textual basis for construing the "exercise of the right to petition" to require that lawsuits have some sort of additional independent connection with governmental or public issues beyond being a form of petitioning protected by the First Amendment. Consequently, Serafine's lawsuit is not, as the Blunts urge, excluded from the TCPA's "exercise of the right to petition" merely because it concerns a private or personal dispute and not loftier things.

The Blunts' second argument relates to the interplay between the TCPA and other statutory remedies that the Legislature has provided for civil litigants. They urge that the "exercise of the right to petition" under the TCPA cannot be construed to encompass Serafine's filing of her lis pendens notice (and, by extension, the lawsuit of which it gives notice) because the Legislature, in their view, made the same conduct actionable under Chapter 12 of the Civil Practice and Remedies Code, at least when done "fraudulently." The Blunts reason that construing the TCPA to protect Serafine's filings as an "exercise of the right to petition" would create an irreconcilable conflict with Chapter 12 and deprive that other statute of effect, belying legislative intent that the TCPA's protections extend so broadly.

---

[126] *Id.* at 570 (quoting *Braun v. The Chronicle Publ'g Co.*, 61 Cal. Rptr. 2d 58, 64 (1997)).

This argument fails for at least two reasons. First, the Blunts rely on a flawed premise that giving effect to the TCPA as against their Chapter 12 claims would create an irreconcilable conflict between the two statutes. The TCPA would not bar the Blunts' Chapter 12 claims or alter their substantive elements, per se, but would instead require (and ultimately did require) the Blunts to establish "by clear and specific evidence a prima facie case for each essential element" of the claims in order to continue prosecuting them.[127] While perhaps burdensome in practical effect, the requirement does not deprive Chapter 12 of all effect.

Second, and more significantly, the Legislature's broad definition of a "legal action" that is subject to dismissal under the TCPA—"a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief"[128]—does not distinguish between statutory claims such as those the Blunts assert under Chapter 12 from those rooted in common law or equity, let alone exclude statutory claims from the definition. The definition of "legal action," rather, would apply to all of these categories of claims. Further confirmation of that intent is found in section 27.010, the TCPA's provision that exempts certain "legal actions" from the Act's coverage.[129] Among these exemptions are "legal actions" founded on various different statutory theories, including wrongful-death and survival actions[130] and those "brought under the Insurance Code."[131] Section 27.010 thus reflects the Legislature's

---

[127] *See* Tex. Civ. Prac. & Rem. Code § 27.005(c).

[128] *Id.* § 27.001(6).

[129] *See id.* § 27.010.

[130] *See id*. § 27.010(c); *see also id.* §§ 71.001–.021 (wrongful-death and survival statutes).

[131] *Id.* § 27.010(d).

awareness that its definition of "legal action" extended to statutory claims to the same extent as other kinds. It likewise demonstrates the Legislature's specific decision to exempt certain types of statutory claims (along with certain common-law or equitable claims) from the Act and not others. The Blunts' claims under Chapter 12 are among those that were not excluded by section 27.010, and the Legislature's decision must be given effect.[132]

But while this conclusion should be fairly uncontroversial in light of the TCPA's text, the same might not be said for its implications. This conclusion points to a broader tension between the TCPA and other statutory remedies which, like Chapter 12, are aimed combating frivolous or bad-faith court filings. These enactments include, to name but a few examples, Chapter 10 of the Civil Practice and Remedies Code, which authorizes sanctions based on court filings that are frivolous or brought for an improper purpose;[133] Chapter 11 of that code, which restricts suits brought by persons declared to be vexatious litigants;[134] Chapter 14 of the code, which targets frivolous or malicious inmate litigation;[135] and the recently enacted section 22.004(c) of the Government Code, whereby the Legislature mandated adoption of court rules (later promulgated as Tex. R. Civ. P. 91a) facilitating quick dismissal of lawsuits having "no basis in law or fact."[136] As we have seen, lawsuits, regardless of subject matter, are deemed to be the protected "exercise of the

---

[132] *See TGS-NOPEC*, 340 S.W.3d at 439 (noting statutory presumption that "Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen" (citing *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008))).

[133] *See* Tex. Civ. Prac. & Rem. Code §§ 10.001–.006.

[134] *See id*. §§ 11.001–.104.

[135] *See id*. §§ 14.001–.014.

[136] *See* Tex. Gov't Code § 22.004(g); Tex. R. Civ. P. 91a.

44

right to petition" under the TCPA, as written, unless they can be shown to be shams (and possibly not even then). Assuming the TCPA incorporates the sham litigation limitation, the limitation would require proof of *both* the absence of any objective merit *and* the subjective intent to harm through the collateral effects of the litigation process[137]—a narrower and more exacting standard than many of the other statutory remedies require.[138] And if the TCPA did not incorporate the sham litigation limitation, it would protect *all* lawsuits as the "exercise of the right to petition," regardless of merit—including shams and SLAPPs.

In either case, the net effect would be that the TCPA protects, as the "exercise of the right to petition," frivolous or abusive lawsuits that would be actionable or sanctionable under these other statutes and would correspondingly condition a party's pursuit of these remedies on satisfaction of the Act's "clear and specific evidence a prima facie case for each essential element" requirement.[139] While it seems rather surprising that any recent Texas Legislature would actually enact a law that *protects* lawsuit abuse—even deeming it tantamount to the exercise of our most

---

[137] *See Professional Real Estate Investors*, 508 U.S. at 60–61.

[138] *See, e.g.*, Tex. Civ. Prac. & Rem. Code § 10.001(1) (authorizing sanctions if evidence establishes that pleading or motion brought for "improper purpose"; claims, defenses, or other legal defenses are unwarranted or frivolous; allegations or factual contentions lack factual support; *or* denials of factual contentions are unwarranted or unreasonable); *id.* § 14.003 (authorizing dismissal of inmate claims if court finds that claim is frivolous or malicious, allegation of poverty is false, *or* affidavit or unsworn declaration is false); Tex. R. Civ. P. 91a (authorizing court to dismiss cause of action if allegations made would not entitle claimant to relief sought).

[139] As previously noted, the TCPA's broad definition of "legal action" would seemingly encompass actions or motions seeking these remedies, to the extent they can be considered to seek "legal or equitable relief." *See supra* pp. 10–11. Similarly, as confirmed by the analysis in the next section, the "legal action" would be deemed to be "based on, relate[d] to, or in response to" Serafine's lawsuit (i.e., the "exercise of the right to petition") because, at a minimum, the "legal action" would seek relief predicated on that lawsuit.

cherished constitutional liberties—courts are required to give effect to the language the Legislature has used.

Perhaps subsection (a) of section 27.011 is intended to head off this sort of result. That provision, again, instructs courts to construe the Act so as not to "abrogate or lessen any other defense, remedy, immunity, or privilege" that external law provides against the class of "legal actions" against the Act provides a remedy.[140]  But while subsection (a) would seem to ensure that the TCPA does not displace other remedies that the movant may possess against a non-movant's "legal action" that the motion targets, it is unclear whether or how it would limit the breadth of the "exercise of the right to petition" on which the motion could be predicated.

**III.**

**"*IS BASED ON, RELATES TO, OR IS IN RESPONSE TO*" PRESENTS ADDITIONAL VEXING ISSUES FOR COURTS AND LITIGANTS**

At risk of overdoing this judicial "exercise of the right of free speech" (which is probably also the "exercise of the right of petition" and the "exercise of the right of association" if those definitions are read in isolation), I will conclude with two sets of observations regarding the meaning and implications of the TCPA's "is based on, relates to, or is in response to" requirement and the Court's application of it here.  First, when combined with an "exercise of the right to petition" definition that encompasses most (if not all) claims filed in court and a "legal action" definition that similarly encompasses most (if not all) claims filed in court, the effect of the prevailing construction that the Court follows here—requiring only that a "legal action" seek relief

---

[140]  *See* Tex. Civ. Prac. & Rem. Code § 27.011(a).

predicated on alleged injury from the opposing claim, a/k/a "exercise of the right to petition"—is to make the TCPA available as a tactical weapon in a vast number of instances when litigants assert competing claims against one another, at least for the party who files its claims first—just as Serafine did here. In this context, as others, the recent observation of Justice Field is quite apt: "It seems that any skilled litigator could figure out a way to file a motion to dismiss under the TCPA in nearly every case, in the hope that the [claim] will not only be dismissed, but that the movant will also be awarded attorney's fees."[141] And as he added, such consequences—a de facto loser-pays regime tied to summary dispositions, presumptively with no discovery—"turn[s] civil litigation practice in general on its head."[142]

I regret to add to Justice Field's observations that the TCPA's wording may actually support a construction of "is based on, relates to, or is in response to" that (to borrow his metaphor again) would cause civil litigation's head to spin. The reasons for this begin with the fact that the Legislature did not define "is based on, relates to, or is in response to" in the TCPA. In the absence of definitions of statutory terms and phrases, courts are generally to apply their "common" or

---

[141] *See Neyland*, 2015 WL 1612155, at *12 (Field, J., concurring).

[142] *Id*.

"ordinary" meaning, such as may be reflected in dictionary definitions,[143] while remaining mindful that context may further inform that meaning.[144]

Applying this analysis, the ordinary meaning of "is based on" would denote a counterclaim by the Blunts that has Serafine's lawsuit or lis pendens as a "main ingredient" or "fundamental part."[145] This is also consistent with the Act's use of the word "based" in section 27.006, requiring that trial courts "shall consider the pleadings and supporting and opposing affidavits stating *the facts on which the liability or defense is based.*"[146] But it can also be observed that this meaning of "based" or "is based on" obviously corresponds to the prevailing construction that Texas courts have been giving to the phrase "is based on, relates to, or is in response to" as a whole, focusing on the factual bases underlying a "legal action."

---

[143]  *See Traxler*, 376 S.W.3d at 747 & n.25 (describing as "cardinal law" supreme court's preference for relying on "common meaning of words chose by the Legislature" unless technical meaning has been acquired by "legislative definition or otherwise" (citing, among others, Tex. Gov't Code § 311.011(a); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003))); *see also id.* (consulting "a well-known dictionary" to discern common meanings of "transmission" and "distribution").

[144]  *See TGS-NOPEC*, 340 S.W.3d at 441 ("Language cannot be interpreted apart from context."); *see also Jaster*, 438 S.W.3d at 566 (concluding that context confirmed common meanings of "plaintiff" and "action"); *City of Houston v. Bates*, 406 S.W.3d 539, 554 (Tex. 2013) (considering common meaning and context together to determine Legislature's intent regarding scope of statute).

[145]  *See Webster's Third New Int'l Dictionary* 180 (2002) (defining "base" (n.) as "main ingredient," and "fundamental part of something"); *The American Heritage Dictionary of the English Language* 148 (2011) (defining "base" (n.) as "fundamental principle," "underlying concept" "fundamental ingredient" and "chief constituent"); *see also Black's Dictionary* 180 (10th ed. 2014) (defining "base" (v.) as "to use (something) as the thing from which something else is developed").

[146]  Tex. Civ. Prac. & Rem. Code § 27.006(a) (emphasis added).

What, then, is the role of the two remaining components of the standard, "relates to" and "in response to"? The Legislature phrased the three components of the standard in the disjunctive—"is based on, relates to, *or* is in response to"—and we would normally presume that these alternatives were not intended to be redundancies of one another, but that each would have some distinct meaning and effect.[147] The ordinary meaning of "relates to" would denote some sort of connection, reference, or relationship,[148] while "in response to" would denote some sort of answer or other act in return.[149] Each term, so defined, would have sweeping impact when applied to competing claims in litigation. The ordinary meaning of a "legal action" that "relates to" the "exercise of the right to petition" in the form of a lawsuit would encompass, among other claims, those arising from the same "transaction or occurrence" as the lawsuit, like compulsory counterclaims.[150] The ordinary meaning of "[i]n response to" would sweep more broadly still, seemingly including *any* counterclaim or other competing or defensive claim that another

---

[147] *See TGS-NOPEC*, 340 S.W.3d at 439 (noting statutory presumption that "Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen" (citing *In re M.N.*, 262 S.W.3d at 802).

[148] *See Webster's* at 1916 (defining "relate" as "to be in relationship: to have reference"); *American Heritage* at 1482 (defining "relate" as "to have connection, relation, or reference").

[149] *See Webster's* at 1935 (defining "response" as "act or action of saying something in return, making an answer"); *American Heritage* at 1496 (defining "response" as "an answer").

[150] *See* Tex. R. Civ. P. 97.

party subsequently asserts.[151]  In either case, "is based on, related to, or is in response to" would, collectively, extend considerably farther beyond even the prevailing Texas construction.

On the other hand, other provisions within the TCPA may suggest a somewhat narrower construction of the "relates to" and "is in response to" components.  Perhaps the intent of "relates to" or "is in response to" is merely to capture any "legal actions" that have the subjective

---

[151]  Also instructive is the California Supreme Court's analysis of that state's counterpart provision to the TCPA's "is based on, relates to, or is in response to," which refers solely to "[a] cause of action against a person *arising from*" the expressive activity protected by that statute.  *See City of Cotati v. Cashman*, 52 P.3d 695, 701–02 (Cal. 2002) (construing Cal. Civ. Proc. Code § 425.16(b)(1)) (emphasis added).  Summarizing the construction of "arising from," that court has explained:

> the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech.  A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) [the statutory definitions of "acts in furtherance of" those rights].

*Id*. (internal quotations and citations omitted) (emphasis in original).  Consequently, the plaintiff's subjective intent—e.g., to chill or punish expression in a manner characteristic of the SLAPP paradigm—is simply irrelevant to the analysis, which focuses solely on the factual bases underlying the claim rather than the claimant's motives in asserting it.  *See id*. at 699 ("[T]he anti-]SLAPP statute, construed in accordance with its plain language, incorporates no intent-to-chill pleading or proof requirement.").  Another corollary, according to the California court, is that "the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech." *Id*. at 701 (emphasis in original).  Thus, in the view of the California court, a plaintiff's cause of action does not "arise from" protected expression merely because it is based upon the same underlying controversy as another lawsuit or was filed subsequent to such a lawsuit. *Id*. at 700–03.  Were it otherwise, the court observed, effectively *any* counterclaim or other responsive pleading would be subject to potential dismissal under the statute, which it deemed an "absurd result" that the state's legislature presumably did not intend. *Id*. at 700.

This analysis would imply that a statute having additional components beyond "arising under" or "based on," which it viewed as equivalent, might well extend to competing claims merely arising from the same controversy or those merely responding to a prior claim.

goal of chilling speech. That much may be suggested by section 27.007's proviso for "additional findings" "regarding whether the legal action was brought to deter or prevent the moving party from exercising constitutional rights and is brought for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation."[152] Or perhaps the Legislature intended no substantive distinction between the component terms at all. While courts generally are to avoid construing statutes to create redundancies, the Texas Supreme Court has also recognized that "there are times when redundancies are precisely what the Legislature intended."[153]

Still another alternative may be suggested by the foregoing head-turning or head-spinning implications of applying a "is based on, relates to, or is in response to" standard that is construed to require merely factual, procedural, or temporal relationships between competing claims. Perhaps all of these implications should ultimately be deemed "absurd results" that the Legislature could not have possibly have intended, such that courts must eschew what would otherwise appear to be the textual construction of "is based on, relates to, or is in response to" in conjunction with the TCPA's expansive definitions of "legal action" and the "exercise of the right to petition."[154] As for

---

[152] Tex. Civ. Prac. & Rem. Code § 27.007.

[153] *In re Estate of Nash*, 220 S.W.3d 914, 918 (Tex. 2007) (citing *In re City of Georgetown*, 53 S.W.3d 328, 336 (Tex. 2001) ("The only reasonable explanations for the redundancies . . . is that the Legislature repeated itself out of an abundance of caution, for emphasis, or both.")).

[154] *See, e.g.*, *Entergy*, 282 S.W.3d at 437 (noting that general statutory construction rules apply "unless enforcing the plain language of the statute as written would produce absurd results (citing *Fleming Foods*, 6 S.W.3d at 284)); *City of Rockwall*, 246 S.W.3d at 626 (same); *see also T.C.R. v. Bell Cnty. Dist. Attorney's Office*, 305 S.W.3d 661, 671–72 (Tex. App.—Austin 2009, no pet.) (declining to "second-guess" Legislature's policy judgment under "absurd-results" principle); J. Woodfin Jones, *The Absurd–Results Principle of Statutory Construction in Texas*, 15 Rev. Litig. 81 (1996) (discussing history of this principle).

what the meaning of these operative terms would be in that event, I would point out that some courts in other states have construed similar laws for similar reasons to apply only against the conventional understanding of SLAPP litigation.[155]

## IV.

## THIS COURT HAS CORRECTLY DECIDED THE "MIXED CLAIM" ISSUE

Implicit in the Court's holdings regarding the Blunts' tortious-interference claim (and in memorandum opinions this Court has issued in some other TCPA cases[156]) is that where, as here, a "legal action" "is based on, relates to, or is in response to" (whatever that phrase may mean) both expression protected by the Act and other unprotected activity, the "legal action" is subject to dismissal only to the extent it "is based on, relates to, or is in response to" the protected conduct, as opposed to being subject to dismissal in its entirety. This is a significant holding that should be emphasized, as should the fact that it finds support in at least three features of the TCPA's text.

The first is that the TCPA defines "legal action"—that which is subject to dismissal—both expansively and variously, as previously noted, referring to everything from

---

[155] *See Sandholm v. Kuecker*, 962 N.E.2d 418, 429–30 (Ill. 2012) (holding that "based on, relates to, or is in response to" standard identical to TCPA's applies "only to actions based *solely* on the [movant's] petitioning activities" and not "where a plaintiff files suit genuinely seeking relief for damages for the alleged defamation or intentionally tortious acts of defendants"); *see also Duracraft Corp. v. Holmes Prods. Corp.*, 691 N.E.2d 935, 941–44 (Mass. 1998) (construing "based on" standard in Massachusetts "anti-SLAPP" law to require that movant show "that the claims against it are 'based on' the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities").

[156] *See Neyland*, 2015 WL 1612155, at *10; *Sheffield*, 2014 WL 411672, at *4.

an entire action or proceeding to particular facts that underlie a claim or cause of action.[157] This nomenclature contemplates the drawing of distinctions not only between claims, but also between factual theories, as here.

Adding further support to this construction are the dual overarching purposes that the Legislature has declared the TCPA is to serve: "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."[158] Neither purpose is advanced by holding that a claim is *wholly* subject to dismissal merely because it *partly* "is based on, relates to, or is in response to" protected expression under the Act. Nor would these purposes be served by the converse holding that the claim is *wholly* beyond the Act merely it "is based on, relates to, or is in response to" some unprotected activity. The Court's construction gives effect to both statutory purposes within the proper sphere of their respective applications.

The third reason supporting this construction is that it is consistent with longstanding Texas principles that cases should not be dismissed based merely on pleading defects that are readily curable. Where, for example, it is asserted that a claimant has failed to plead facts sufficient to invoke a trial court's jurisdiction or to plead facts sufficient to constitute a cognizable cause of action, Texas law has long been generous in permitting the claimant to replead, granting dismissal

---

[157] *See* Tex. Civ. Prac. & Rem. Code § 27.001(6); *see also Jaster*, 438 S.W.3d at 563–71.

[158] Tex. Civ. Prac. & Rem. Code § 27.002.

only if the claimant is unable after opportunity to do so or the defect is incurable.[159] The Blunts'

tortious-interference counterclaim presents an analogous situation—on this record, the Blunts could

have avoided all entanglement with the TCPA had they simply pleaded (or repleaded) their claim

so as to complain exclusively on Serafine's alleged threats. Although the TCPA does not mention

a repleading remedy, per se, these longstanding principles of Texas jurisprudence, of which

courts must assume the Legislature was aware,[160] nonetheless counsel against a construction of the

TCPA that would mandate presumptive dismissal of an entire claim merely because its factual

underpinnings might include even one allegation that implicates the Act's protections. Construing

the Act to make the Blunts' claim subject to dismissal only to the extent based on Serafine's lawsuit,

and otherwise not subject to dismissal, is consistent with and effectuates these established principles.

**CONCLUSION**

The TCPA presents difficult issues of statutory construction that broadly impact not

only the sound operation of our civil justice system, but the sometimes-competing rights of Texans

that the statute was expressly intended to balance and reconcile. As my expressed concerns have

failed to sway this Court thus far, I can only hope that some justice of the Texas Supreme Court

---

[159] *See Parker v. Barefield*, 206 S.W.3d 119, 121 (Tex. 2006) (per curiam) (if trial court grants special exception for failure to state a cause of action and defect is curable, trial court must allow pleader opportunity to amend); *Miranda*, 133 S.W.3d at 226–27 (noting that plaintiff should be afforded opportunity to amend pleadings where pleadings do not affirmatively demonstrate lack of jurisdiction).

[160] *See Mont Belvieu Caverns, LLC v. Texas Comm'n on Envtl. Quality*, 382 S.W.3d 472, 486 (Tex. App.—Austin 2012, no pet.) (noting presumption in statutory construction that "Legislature was aware of the background law and acted with reference to it" (citing *Acker*, 790 S.W.2d at 301)).

might be listening and find this writing of some assistance in this or another of the TCPA cases that are beginning to crowd its docket. Even better, I would hope that the Texas Legislature might be listening, because it could provide, by amending the TCPA, the clearest and most direct expression of any legislative intent that has been eluding the Judicial Branch.


_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Puryear and Pemberton

Filed:   June 26, 2015